**Potter Anderson & Corroon LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
302.984.6000
potteranderson.com



Jonathan A. Choa
Partner
Attorney at Law
he / him / hisjchoa@potteranderson.com
Direct  302.984.6189

December 21, 2023

**BY CM/ECF**

The Honorable William C. Bryson
United States Court of Appeals for the Federal Circuit
Howard T. Markey National Courts Building
717 Madison Place, N.W.
Washington D.C. 20439

   Re: *Rheault v. Halma Holdings Inc. et al*, D. Del. C.A. No. 23-700-WCB

Dear Judge Bryson:

  This Firm represents the Plaintiff Mark Rheault.

  We write in response to Defendants Halma Holdings Inc. and CenTrak, Inc.'s ("Centrak") December 20, 2023 letter (ECF No. 40), which submits two "oral orders" that Defendants contend support their position concerning the purported necessity for including an Attorneys'-Eyes-Only provision in the proposed Protective Order.

  At the hearing, the Court asked Defendants for any cases that supported their position. Defendants first identified *R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. CIVA 06-032 JJF, 2007 WL 61885 (D. Del. Jan. 4, 2007) and *Apeldyn Corp. v. AU Optronics Corp.*, No. CIV.A. 08-568-SLR, 2012 WL 2368796, at *2 (D. Del. June 13, 2012). But unlike here, both *R.R. Donnelley* and *Apeldyn* involved corporate competitors and high-level, senior executive decision makers. *See R.R. Donnelley*, 2007 WL 61885, at *2 (finding that the plaintiff's "President of Corporate Strategic Initiatives" was a competitive decision-maker for whom access to attorneys' eyes only information would create a "sufficiently tangible" risk of inadvertent disclosure that would be a "specific threat to the Defendants' interests"); *see also Apeldyn*, 2012 WL 2368796, at *2 (finding that the plaintiff's President and sole Director were "key decision makers" of Defendants' direct competitor).

  Because those cases were different, Defendants then offered two cases for which they did not have citations. After the hearing, Defendants filed their letter submitting the two "oral orders."

Setting aside that the "oral orders" are not binding precedent, the two orders are also readily distinguishable. *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, C.A. No. 14-1430-LPSCJB (D. Del.) involved alleged patent infringement between competing companies. *Id.,* Pl.'s Compl., ECF No. 1. Further, the *Elm* protective order dispute did not involve an attorneys' eyes only provision.

Instead, plaintiff-company, *Elm*, sought permission to orally discuss defendant-companies' "confidential" and "highly confidential information" with plaintiff-company's settlement counsel. The Court denied plaintiff's request, noting that plaintiff's proposal posed risks of "unfair competitive harm" to defendants "should a competitive decisionmaker affiliated with plaintiff inadvertently use defendants' confidential information against them." *Elm*, Oral Order, ECF No. 86. The situation here is inapposite.

Unlike in *Elm*, Rheault is an individual who does not compete with Defendants, and who is actually prohibited from competing with Defendants for a period of one year after the termination of his employment with CenTrak under a CenTrak Employee Confidentiality, Non-Competition and Assignment of Invention Agreement, attached as **Exhibit A.**[1] (*See* Ex. A, § 2.4, Non-Competition.) CenTrak terminated Rheault on December 1, 2023, meaning that Rheault is prohibited from competing with CenTrak until December 1, 2024.

Thus, the Court need not enter a Protective Order prohibiting Rheault from reviewing materials produced in his own case to minimize any purported risk associated with the disclosure of certain information, when Defendants themselves have already addressed this perceived risk in a contract that they drafted and required Rheault, a former employee, to sign.

In *Gammino v. Am. Tel. & Tel. Co.*, C.A. No. 12-666-LPS (D. Del.), the Court found that there was "good cause" to prevent the plaintiff from accessing certain confidential financial information because the plaintiff was "a competitive decisionmaker as a patent assertion entity" and there was thus a "risk of inadvertent disclosure." But that case—a patent case—presented very different circumstances than the present controversy.

As one of the defendants noted, the plaintiff in *Gammino* was "the sole decision maker for his patent assertion activities, which presents a particularized risk of inadvertent disclosure of protected information." *See Gammino*, Dkt. No. 102 (citing case law addressing how patent assertion entity's activities place them in a position of creating "a high risk of inadvertent disclosure") (internal citations omitted). According to that defendant, the *Gammino* plaintiff's patent assertion activities were "extensive" because he had unsuccessfully filed eleven cases against various of those defendants and their affiliates (which are direct competitors to each other) between 2003 and 2015. (*Id.*)

Unlike *Gammino*, this is not a patent case involving a repeat-plaintiff patent assertion entity. Also unlike in *Gammino*, Defendants have presented no evidence to satisfy their burden of

---

[1] After the hearing, Plaintiff's counsel contacted Defendants to inquire about the CenTrak Employee Confidentiality, Non-Competition and Assignment of Invention Agreement. (See Email Thread, attached as Ex. B.)

good cause that Rheault is a competitive decision maker or that there is some risk of inadvertent disclosure.

As to financial information, in this *breach of contract and fraud* case (and unlike in *Gammino*), the underlying contract gives Rheault the right to access Defendants' financial information. Section 1.8(b)(i), for example, states that "Seller (Rheault) and his Representatives shall have reasonable access to the books and records (including financial statements) of the Company (Infinite Leap), Buyer (Halma Holdings Inc.) and CenTrak, Inc., together with all work papers, if any, and any other records. . ." necessary to calculate the Earnout. (Stock Purchase Agmt. (Dkt. No. 1-1) §1.8(b)(i).) Schedule 1.8, as another example, lists the component parts of that financial information, and includes net sales and cost of goods sold for various products and services. (*Id.*, Sched. 1.8.)

For all these reasons for the reasons provided yesterday, a protective order with an Attorneys' Eyes Only provision is not appropriate here.

Respectfully,

*/s/ Jonathan A. Choa*

Jonathan A. Choa  (#5319)

cc:  All Counsel of Record – by CM/ECF