# Exhibit B

| | |
|---|---|
| **From:** | Ruskusky, John <jtruskusky@nixonpeabody.com> |
| **Sent:** | Thursday, December 21, 2023 3:41 PM |
| **To:** | Lucas Westby |
| **Cc:** | Wade Malone; Annie Reed; Choa, Jonathan A.; Muscarella, Marissa; Tunney, Rachel; DiTomo, John |
| **Subject:** | RE: Rheault v. Halma, et al. \| Non-Compete |
| **Attachments:** | Ltr to Court re Non-Compete 4875-4122-4088 v.1.docx; HR-50002 CenTrak Employee Restrictive Covenant Agreement 042621.pdf |

**External Source/Sender notice**
Use caution responding or clicking links/attachments.

Lucas – CenTrak has located a signed copy of what you sent (attached). Halma has not located anything. Thus, we plan to file the attached Notice with the Court today.

John

---

**From:** Lucas Westby <Lucas.Westby@nelsonmullins.com>
**Sent:** Thursday, December 21, 2023 11:14 AM
**To:** Ruskusky, John <jtruskusky@nixonpeabody.com>
**Cc:** Wade Malone <wade.malone@nelsonmullins.com>; Annie Reed <annie.reed@nelsonmullins.com>; Choa, Jonathan A. <jchoa@potteranderson.com>; Muscarella, Marissa <mmuscarella@nixonpeabody.com>; Tunney, Rachel <rtunney@morrisnichols.com>; DiTomo, John <jditomo@morrisnichols.com>
**Subject:** Rheault v. Halma, et al. | Non-Compete

**[EXTERNAL E-MAIL]**
Be Aware of Links and Attachments

John – Good afternoon. In argument yesterday, you represented that Mr. Rheault was not bound by a non-compete. We have located the attached, unsigned agreement. Can you please check with your client and confirm today, one way or another, whether the your clients have a signed copy of the agreement and whether your representation yesterday was accurate? Thank you.

Best regards,
Lucas



**LUCAS A. WESTBY**  **PARTNER**
lucas.westby@nelsonmullins.com
**ATLANTIC STATION | SUITE 1700**
**201 17TH STREET NW | ATLANTA, GA 30363**
T 404.322.6237   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.



Nixon Peabody LLP
70 W. Madison Street, Suite 5200
Chicago, IL  60602-4224

**John T. Ruskusky**
Partner

Attorneys at Law
nixonpeabody.com
@NixonPeabodyLLP

T / 312.977.4460
F / 844.571.6779
jtruskusky@nixonpeabody.com

December 21, 2023

<u>**VIA ECF**</u>

The Honorable William C. Bryson
United States Court of Appeals
Howard T. Markey National Courts Building
717 Madison Place, N.W.
Washington, DC 20439-0000

Re:   *<u>Mark Rheault v. Halma Holdings Inc. and CenTrak, Inc.</u>,*
**Case No. 23-cv-00700-UNA**

Dear Judge Bryson:

At the oral argument yesterday, Your Honor inquired whether Plaintiff was bound by a non-compete provision.  Plaintiff's counsel (Mr. Malone) could not recall.  Defendants' counsel (Mr. Ruskusky) reported his understanding that there was no non-compete provision in the subject Stock Purchase Agreement.

Following the oral argument, counsel for the parties checked with their respective clients to address whether there was any non-compete provision that may apply to Plaintiff.  Through these efforts, Plaintiff's counsel identified an unsigned Confidentiality, Non-Competition and Assignment of Invention Agreement.  Following the hearing, Defendants' counsel similarly received a copy of a CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement signed by Plaintiff during his prior employment with CenTrak.  A copy of this signed Agreement is attached.

Respectfully Submitted,

John T. Ruskusky



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 04/01/2021
Process Owner: David Minning | Title: CEO

# CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement

This Employee Confidentiality, Non-Competition and Assignment of Invention Agreement ("Agreement"), effective as of April 1, 2021 (the "Effective Date"), is by and between CenTrak, Inc. and any of its subsidiaries or affiliates (collectively "CenTrak") and the undersigned employee ("Employee").

WHEREAS, simultaneously with the Effective Date, CenTrak has agreed to increase Employee's annual gross salary in accordance with other documentation separately delivered by CenTrak to Employee (the "Salary Increase"); and

WHEREAS, CenTrak's agreement to make the Salary Increase is conditioned upon Employee's agreement to the covenants, terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the Salary Increase, the other consideration referenced in Section 1 below, and the covenants, terms, and conditions contained in this Agreement, CenTrak and Employee agree as follows:

1.      **CONSIDERATION.** Employee and CenTrak acknowledge and agree that Employee's execution of this Agreement is a condition to the Salary Increase and Employee's employment with CenTrak. Employee acknowledges and agrees that the Salary Increase and employment by CenTrak with an opportunity for a payment under CenTrak's various compensation plans constitutes valuable and sufficient consideration for the execution of this Agreement, including the restrictive covenants contained in this Agreement. Employee further acknowledges that CenTrak has a substantial investment in the matters protected by this Agreement, including the confidential information, training, and knowledge supplied or to be supplied to Employee in connection with Employee's employment. Employee acknowledges that Employee has carefully reviewed all of the covenants, terms and conditions of this Agreement, and has been advised to seek independent legal counsel prior to its execution.

2.      **RESTRICTIVE COVENANTS.** In consideration of the covenants, terms and conditions in this Agreement, Employee agrees to the following restrictive covenants:

2.1.    Non-Disclosure of Confidential Information. Employee acknowledges that Employee's position with CenTrak will expose Employee to certain confidential, competitively sensitive and proprietary information of CenTrak including, without limitation, techniques; know how; processes; strategies; systems; databases; applications; programs software; methods of operation; negotiations and contracts; research and development; engineering data; financial information (including financial statements); pricing and cost information and strategies; data regarding sales; employee identity and lists; customer identity and lists; potential customer identity and lists; customer requirements information received from any customer of CenTrak; supplier and vendor identity and lists; training materials; product designs; artist content of productions; marketing information, research and strategies; business plans; projections; programming data; formulas; secret processes; machinery or devices; research projects; strategic plans or other information considered by CenTrak to be confidential, competitively sensitive or proprietary or that is considered a trade secret under applicable law, whether in tangible, electronic or other form or medium ("Confidential Information"). Employee acknowledges that Confidential Information is a valuable, special and unique asset of CenTrak. Employee will not, directly or indirectly, during or at any time after Employee's employment with CenTrak, use Confidential Information or any part of such Confidential Information for Employee's benefit or the benefit of any person, business or entity or disclose Confidential Information or any part of such Confidential Information to any person, business, or entity for any reason or purpose whatsoever, except upon the prior written consent of CenTrak. Employee will not, by any means, transfer or forward outside of CenTrak's computer network any CenTrak information, including, without limitation, Confidential Information, without the prior written consent of the CenTrak. The confidentiality obligations herein shall not prohibit Employee from divulging Confidential Information by order of court or agency of competent jurisdiction or as otherwise required by law; however, Employee shall promptly inform CenTrak of any such situations and shall take reasonable steps to prevent disclosure of Confidential Information until CenTrak has been notified of such required disclosure and has had a reasonable



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 04/01/2021
Process Owner: David Minning | Title: CEO

opportunity to seek a protective order. Any such notification to CenTrak shall be made pursuant to Section 8 of this Agreement.

2.2.   Non-Solicitation of Employees and Agents. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee shall not, directly or indirectly, solicit, encourage or induce or attempt to solicit, encourage or induce, any person who provides services to CenTrak, whether as an employee, consultant, independent contractor or agent, or any entity which provides services to CenTrak under an agency relationship to terminate his, her or its relationship with or services for CenTrak, and shall not, directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ or offer employment to any person, agent or entity that provided services to CenTrak unless such person, agent or entity shall have ceased to provide services to CenTrak, or to have had a legal relationship with CenTrak, for a period of at least six (6) months.

2.3.   Non-Solicitation of Customers and Prospective Customers. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee will not, directly or indirectly, solicit, contact, or do business with or attempt to solicit or do business with any customer or prospective customer of CenTrak, with respect to activities which compete in whole or in part with the activities of CenTrak. For purposes of this Agreement, "customer" includes any person, business, or entity with whom Employee directly or indirectly had transacted business during Employee's employment with CenTrak. For purposes of this Agreement, "prospective customer" includes any person, business, or entity: (i) that Employee contacted, solicited, or in any way dealt at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak for the purpose soliciting the sale of goods and/or services of CenTrak; (ii) any person, business, or entity for whom Employee had any direct or indirect responsibility at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak; and (iii) any person, business, or entity with whom CenTrak, with Employee's direct or indirect participation, had made contact and provided a quote or proposal or had been asked to provide a quote or proposal within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak.

2.4.   Non-Competition. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by Employee for any reason or no reason or by CenTrak for cause, Employee shall not, directly or indirectly on behalf of Employee or any other person, business or entity, compete with CenTrak in the Territory. For purposes of this Agreement, "for cause" means CenTrak's termination of Employee's employment for behavior that, in the sole discretion of the Company, amounts to a violation of the CenTrak's business guidelines. For purposes of this Agreement, "compete" means participating in the discovery, reduction to practice, manufacture, management, planning, research, development, or sale of real time locating technology and/or environmental monitoring (including without limitation the monitoring and/or control of temperature, humidity and other environmental conditions) infant, child or adult wander prevention, emergency alert, and/or senior care. For purposes of this Agreement, "Territory" means the United States, and any geographic areas outside of the United States serviced by Employee during the three (3) year period immediately preceding Employee's termination of employment with CenTrak.

2.5.   Return of CenTrak Property and Confidential Information. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee shall return to CenTrak all materials (in whatever form or medium, including electronically stored information) comprising or containing any Confidential Information and all other CenTrak Property in Employee's possession or control. Employee shall not retain any copies of any Confidential Information or CenTrak Property. If the CenTrak Property is not returned in good working order, Employee agrees to pay for any necessary repairs. Employee agrees not to remove any CenTrak Property or tangible Confidential Information from CenTrak's premises except as required in the performance of Employee's work for CenTrak. CenTrak Property is subject to inspection by CenTrak at any time without prior notice. For purposes of this Agreement, "CenTrak Property" means any property (i) owned by CenTrak, (ii) situated on CenTrak's premises, or (iii) provided to Employee by CenTrak.

3.   **INVENTIONS**



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 04/01/2021
Process Owner: David Minning | Title: CEO

3.1. **Inventions.** Employee understands that CenTrak is engaged in a continuous program of research, development, production and marketing and sales in connection with its business and that, as an essential part of employment with CenTrak, Employee may be expected to make new contributions to and create inventions of value for the Company.

3.2. **Disclosure.** During the entire course of employment with CenTrak, Employee will fully and promptly disclose to CenTrak all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by Employee, either alone or with others. Employee shall assign to CenTrak any prior inventions, except those prior inventions listed in Schedule A which shall not belong to CenTrak (the "Prior Inventions").

3.3. **Assignment of Inventions.** Employee acknowledges that copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the United States Copyright Act and that CenTrak will be considered the author of such works. Employee agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of CenTrak, (b) result from work performed by Employee for CenTrak, or (c) relate to CenTrak's business, will be the exclusive property of CenTrak and are assigned by Employee to CenTrak. Employee irrevocably assigns to CenTrak all intellectual property rights (including, but not limited to, patents, copyrights, and trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event Employee is unable or unwilling to execute any required assignment documents described in this document, Employee hereby authorizes CenTrak to execute such documents on Employee's behalf, to the extent necessary to effectuate such assignments.

3.4. **Assistance.** Employee will assist CenTrak in obtaining legal protections for CenTrak's Inventions in any and all countries. Employee will execute any documents that CenTrak may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of CenTrak.

4. **REVOCATION OF AUTHORIZATION.** Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee is not permitted to access CenTrak's computer network for any purpose. Any and all authorizations for use of CenTrak's computer network are considered revoked as of the termination of Employee's employment with CenTrak. The provisions of this section apply to the computer network of any affiliate or subsidiary of CenTrak.

5. **REMEDIES.** Employee acknowledges that breach of this Agreement by Employee will cause CenTrak substantial and irreparable harm, which may not be adequately compensated by damages. In the event of Employee's actual or threatened breach of the provisions of any or all of the terms of this Agreement, CenTrak shall be entitled to obtain equitable relief, including an order requiring Employee to take any affirmative action necessary to effectuate the terms of this Agreement, and enjoining Employee from committing such actual or threatened breach of this Agreement. Employee agrees and acknowledges that CenTrak is entitled to equitable relief without posting a bond. In addition to these equitable remedies, CenTrak shall also be entitled to recover from Employee all of its legal remedies along with any reasonable attorney's fees, expenses and costs CenTrak incurs in connection with Employee's breach or threatened breach of this Agreement. If any provision or restriction of this Agreement is determined to be unenforceable, the remaining provisions and restrictions shall not be affected by such determination. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by CenTrak under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude CenTrak from obtaining injunctive relief.

If a court of competent jurisdiction determines that any provision or restriction in Section 3 is unreasonable or unenforceable, Employee and CenTrak agree that said court shall modify such restriction or provision so that it becomes a reasonable and enforceable restriction on the activities of Employee. Employee acknowledges and agrees that the restrictions contained in Section 3 are reasonable and necessary to protect the legitimate business interests of CenTrak and will not impair Employee's ability to earn a living. Employee further acknowledges and



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 04/01/2021
Process Owner: David Minning | Title: CEO

agrees that the restricted periods of time set forth in Section 3 are material terms of this Agreement and that CenTrak is entitled to Employee's full compliance for the entire periods of time. To insure such compliance Employee agrees that the restricted periods of time in Section 3 shall be tolled during any period of time Employee is not in full compliance with such restrictions.

6. **REPRESENTATION OF EMPLOYEE.** As a material term of this Agreement, Employee makes the following representations to CenTrak:

6.1. Employee represents to CenTrak that Employee is not subject to any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations regarding any employment prior to CenTrak.

6.2. Employee represents that if any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations exist regarding any prior employment, Employee has fully disclosed to CenTrak those restrictions and limitations and confirmed that Employee's employment with CenTrak will not violate those restrictions or limitations.

6.3. Employee represents and agrees that following Employee's termination of employment with CenTrak, Employee will disclose to any future employer of Employee the restrictions and terms contained in this Agreement. Employee further agrees that CenTrak and its successors and assigns may notify any prospective or future employer of Employee of the restrictions and terms contained in this Agreement.

6.4. Employee represents that following Employee's termination of employment with CenTrak, during any of the restricted periods set forth in Section 2, Employee will immediately notify CenTrak in writing of the identity of any prospective or actual employers of Employee.

7. **NOTICE.** Any notice to CenTrak under this Agreement shall be in writing and sent postage prepaid via certified mail return receipt requested addressed to:

> CenTrak, Inc.
> 826 Newtown-Yardley Road
> Newtown, PA 18940
> ATT: CenTrak Legal, e. legal@centrak.com

8. **CHOICE OF LAW.** This Agreement shall be governed in all respects whether as to validity, construction, capacity, performance or otherwise by the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles. With respect to any disputes under this Agreement, the parties submit to the venue and exclusive jurisdiction of the Commonwealth and federal courts in Bucks County, Pennsylvania, and waive any claims as to forum non-convenience with respect to such courts.

9. **MISCELLANEOUS.** This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives, heirs, successors, and assigns, except as otherwise provided in this Agreement. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of CenTrak. CenTrak may assign all of its rights under this Agreement to its successors and assigns. No amendments, modifications, alterations, or additions to this Agreement shall be binding unless made in writing and signed by CenTrak and Employee. The failure of any party to enforce a breach of this Agreement shall not be construed as a waiver of the right to enforce any other breach. The parties stipulate and agree that each and every paragraph, sentence, term, and provision of this Agreement shall be considered independent, reasonable, and severable. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of it; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted. This Agreement constitutes the entire agreement of the parties concerning the subject matter of this Agreement, with all prior negotiations and agreements concerning the subject matter of this Agreement, whether written or oral,



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 04/01/2021
Process Owner: David Minning | Title: CEO

being replaced and superseded by this Agreement, except that any agreement relating to inventions or intellectual property signed by Employee shall remain in effect.

10.  **BRIBERY AND CORRUPTION.** As a member of the Halma™ family of companies, CenTrak adheres to the Halma™ Bribery and Corruption Policy Statement (the "B&C Policy"), which may be found at:

http://www.halma.com/about-halma/code-of-conduct//~/media/Files/H/Halma-Plc-V2/about-us/code-of-conduct/halma-code-of-conduct-sep-2011-a4.pdf.

In accordance with the B&C policy, CenTrak has a zero-tolerance policy towards any bribery or corrupt practices in its business dealings. Honoring the spirit and letter of this policy is expected, despite what may be locally acceptable business practice or convention. Employee represents and warrants that Employee has not engaged in business practices, which violate the B&C Policy or any applicable local, state, federal and foreign laws, orders, rules and regulations regarding bribery and corruption. Employee shall remain in compliance with this clause during the term of this Agreement and while conducting any business dealings with, or on behalf of CenTrak. In addition, CenTrak expects those with whom it does business to disclose any coercion by others that may be in violation of the law. In the event that CenTrak determines, in its reasonable sole discretion, that Employee has breached this clause, CenTrak may terminate this Agreement and any other agreement with Employee without penalty and without any compensation to Employee. Employee shall indemnify and hold CenTrak harmless for all claims, demands, damages, costs, fines, penalties, reasonable attorney's fees, and all other expenses arising from failure of the Employee to comply with this clause.

IN WITNESS WHEREOF, intending to be legally bound, the parties have entered into this Agreement effective as of the date signed by the Employee.

**CENTRAK, INC.**

By: _Thomas Veitz_ (Electronically Signed By)

Printed: Thomas Veitz

Its: _____

Date: 12/9/2021

**EMPLOYEE**

Name: _Mark J Rheault_ (Electronically Signed By)

Printed: Mark J Rheault

Date: 12/9/2021

**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**

Document Number – HR-50002 | Effective Date: 04/01/2021
Process Owner: David Minning | Title - CEO