IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK RHEAULT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-700-WCB |
| | ) | |
| HALMA HOLDINGS INC. and | ) | |
| CENTRAK, INC., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

The parties in this breach of contract action have a dispute regarding the scope of the protective order that they propose to govern the materials produced in the course of this action. The defendants, Halma Holdings, Inc., and Centrak, Inc., argue that the protective order should contain a provision limiting access to certain materials denominated "Highly Confidential—Attorneys' Eyes Only." Those materials would be available only to court personnel, mediators, and counsel of record for the parties. Under the defendants' proposed protective order, the plaintiff, Mark Rheault, who is not an attorney, would be barred from viewing any material designated "Highly Confidential." Mr. Rheault argues that he needs to have access to all the discovery material in the case so that he can intelligently direct his outside counsel regarding the conduct of the litigation, and that the protective order therefore should not contain a "Highly Confidential—Attorneys' Eyes Only" provision limiting his access to material so designated.[1]

---

[1] In this order, the category of materials designated as "Highly Confidential—Attorneys' Eyes Only" will be referred to simply as "highly confidential."

1

The question whether a particular individual should be allowed access to highly confidential materials has arisen in a number of cases. Such cases often involve the question whether certain employees of a party, such as in-house counsel, should be permitted access to materials with that designation. The answer to that question typically turns on whether the employees in question are involved in competitive decisionmaking on behalf of the party. If so, those employees are typically barred from having access to materials designated as highly confidential. If not, they are often allowed access to those materials. *See, e.g.*, *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (in-house counsel allowed access to proprietary business information; counsel was not considered to be involved in competitive decisionmaking merely because he had regular contact with those who were involved in such competitive decisionmaking); *U.S. Steel Co. v. United States*, 730 F.2d 1465, 1467–68 & n.3 (Fed. Cir. 1984) (allowing disclosure to in-house counsel not involved in competitive decisionmaking; rejecting presumption that in-house counsel are more subject to risk of inadvertent disclosure than outside counsel; adopting the term "competitive decisionmaking" as referring to "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor"); *Evertz Microsystems Ltd. v. Lawo Inc.*, No. 19-302, 2019 WL 5864173, at *3 (D. Del. Nov. 8, 2019) (particular outside counsel allowed access to sensitive information because they were not involved in competitive decisionmaking); *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403, 2017 WL 4138961, at *3–8 (D. Del. Sept. 8, 2017) (in-house counsel who plays an active and significant role in directing patent litigation and licensing held to participate in competitive decisionmaking); *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 15-53, 2016 WL 2904592, at *6 (D. Del. May

18, 2016) (allowing in-house counsel access to highly confidential information if counsel is barred from being involved in patent prosecution activity relating to the field of the case); *Apeldyn Corp. v. AU Optronics Corp.*, No 08-568, 2012 WL 2368796, at *8 (D. Del. June 13, 2012) (disclosure of sensitive information to particular corporate representatives would result in competitive disadvantage to opposing party); *R.R. Donnelly & Sons Co. v. Quark, Inc.*, No. 06-32, 2007 WL 61885, at *2 (D. Del. Jan. 4, 2007) (employee who is involved in competitive decisionmaking is barred from access to sensitive information; employee who is not involved in such activity is not barred); *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901, 2005 WL 1801683, at *2 (D. Del. July 28, 2005) (permitting access to plaintiff's Litigation Unit, which does not have a role in the management or competitive decisionmaking activities of the company).[2]

In some instances, the court has permitted in-house counsel to have access to highly confidential information based on the fact that counsel are bound by professional and ethical responsibilities and their conduct is subject to sanctions. *See Avery Dennison Corp. v. Minn. Mining & Mfg. Co.*, No. 01-125, 2001 WL 1339402, at *2 (D. Del. Oct. 26, 2001); *Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, No. 89-484, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990).

---

[2] During oral argument on the protective order dispute and afterwards, counsel for the defendants cited oral orders in *Gammino v. Am. Tel. & Tel. Co.*, No. 12-666, Dkt. No. 108 (Jan. 21, 2015), and *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. 14-1432, Dkt. No. 106 (Feb. 11, 2016), in support of the defendants' position on the protective order issue. However, the two oral orders and the parties' letters filed in connection with those orders make clear that the persons denied access to the confidential materials in both of those cases were competitive decisionmakers. *See Gammino*, Dkt. No. 108 (finding good cause "to prevent [plaintiff] as a competitive decisionmaker as a patent assertion entity from access"); *Elm*, Dkt. No. 102 ("Mr. Epstein and Epicenter IP group are engaged in competitive decisionmaking."). Those orders simply follow the consistent line of cases cited in the text above, going back to the *U.S. Steel* case. They shed no further light on the key question in this case, which is whether Mr. Rheault should be treated as a competitive decisionmaker or otherwise be barred from having access to any highly confidential materials that are produced in this case.

The burden of showing a need for a protective order is on the party seeking the order. As the Third Circuit has stated, "a party seeking to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *British Telecomms. PLC v. IAC/Interactivecorp*, 330 F.R.D. 387, 390 (D. Del. 2019). After careful consideration, I conclude that the defendants have not satisfied their burden in this case.

\* \* \* \* \*

The facts of this case are unusual. Mr. Rheault has sued in his own name; he has no business associates or in-house counsel who could serve to direct the litigation in his stead. According to his outside counsel, Mr. Rheault is retired. He was previously in a business similar to that engaged in by the defendants, but he sold that business to Halma and, according to representations by his outside counsel, he has no plans or intention of returning to that field of work. He is therefore not currently in a position of competitive decisionmaking with regard to the defendants' business.

The defendants express concern that Mr. Rheault, who is still relatively young, could re-enter the business, even though he may have no current intention of doing so. If he is allowed to view materials designated as highly confidential and he re-enters the business in some capacity, the defendants argue, his knowledge of the defendants' proprietary information could result in significant competitive injury to them.

As a general matter, "litigants are entitled to know what is happening in litigation they are involved in." *vMedex, Inc. v. TDS Operating, Inc.*, No. 18-1662, 2021 WL 4806814, at \*3 (D. Del. Oct. 14, 2021). As Judge Robinson put it, "[A]bsent extraordinary circumstances, every client

4

is entitled to have one representative who actually knows what is going on in the litigation and that they are not bound by simply listening to their lawyers give them their representations about what is going on with litigation." *Ineos Fluor Americas LLC v. Honeywell Int'l Inc.*, No. 06-189, Transcript at 6 (D. Del. Jan. 18, 2007). Because Mr. Rheault is on his own in this case, there is no other person who could serve in his stead in directing his outside counsel as to their conduct of the litigation. As the sole party on his side of the litigation, Mr. Rheault has an obvious interest in having access to all the materials that bear on decisions that must be made in the case.

That proposition, of course, has its limits. A party to a lawsuit is not required to provide an adversary who is a competitor with unrestricted access to the party's highly sensitive materials if the adversary's access to those materials would cause serious injury to the party. If Mr. Rheault were still engaged in the same line of business as the defendants, serving as the owner and CEO of a business in direct competition with the defendants, there would be little doubt that the defendants would be entitled to a protective order barring him from gaining access to highly confidential information. In that situation, the balance of interests would dictate that he would have to rely on his outside counsel (or another designee) to make litigation decisions in his case. That, however, is not the situation at hand, as Mr. Rheault no longer works in the same field as the defendants' business.

The defendants acknowledge that Mr. Rheault is not currently competing with them, but they express concern that he might subsequently re-enter the market. If he does, the defendants argue, his awareness of the highly sensitive information produced during the litigation could be highly damaging to the defendants.

The problem is that Mr. Rheault sold his business and left the market in 2021. The prospect that he will at some point in the future re-enter the market the defendants occupy is entirely

5

speculative. The defendants have pointed to no evidence that Mr. Rheault has taken steps to do so or that he has any such intentions. Nor is there any evidence that Mr. Rheault is affiliated with any other party that competes with the defendants. Finally, as a party to this action, Mr. Rheault is subject to the court's authority in matters relating to the litigation, and the protective order that the court enters will prohibit Mr. Rheault from disclosing, at any time in the future, any information covered by the protective order to any third party, a measure that should have the effect of minimizing the risk of disclosure.

The Federal Circuit's decision in the *U.S. Steel* case is instructive here. In that case, the Court of International Trade denied an in-house attorney access to confidential information on the ground inter alia, that it was a "reasonable assumption" that in house counsel "will move into other roles" within the company, such that their status as being uninvolved in competitive decisionmaking could change in the future. 730 F.2d at 1466. The court rejected that rationale for limiting in-house counsel's access to confidential information, holding that the decision whether to allow access to a particular in-house attorney had to be based on that attorney's particular role, not on assumptions as to possible future roles that attorney may play or the status of in-house attorneys generally. *Id.* at 1467–68. As in that case, the question whether granting Mr. Rheault access to highly confidential information would create an unacceptable risk of unauthorized disclosure of that information must rest on the particular facts of the case, not on speculation as to possible changes in that person's role in the future.

In a letter submitted after the oral argument, counsel for Mr. Rheault raised two points that had not been raised in the filing that initiated this dispute over the protective order, Dkt. No. 35. First, in response to a question asked by the court during the oral argument, counsel reported that the parties entered into a non-compete agreement as part of Mr. Rheault's agreement to work for

defendant Centrak following the sale of his company to Halma. The non-compete agreement has a term lasting for one year after the termination of Mr. Rheault's employment with Centrak. Dkt. No. 42 at 2. Mr. Rheault was terminated, according to counsel, on December 1, 2023. Assuming that is so, Mr. Rheault is barred from competing with the defendants for nearly another year.

Second, counsel pointed to a provision in the Stock Purchase Agreement, through which Halma effected the purchase of Mr. Rheault's company. That agreement contains a provision giving Mr. Rheault the right to have reasonable access to the defendants' financial records to the extent necessary to calculate the Earnout, i.e., the amount owed to Mr. Rheault from the sales of his former company's products. Thus, Mr. Rheault already has the right of access to significant amounts of information about the defendants' finances.

Neither of those points is dispositive in Mr. Rheault's favor with respect to the protective order issue. Nonetheless, each tends to support his contention that the risk of serious injury flowing from the disclosure of highly confidential information to Mr. Rheault is not as great as the defendants contend.

Given that there is no evidence that Mr. Rheault intends to resume activity in his former field of business and that the defendants have not shown any other reason why Mr. Rheault should be denied access to the materials designated as "Highly Confidential—Attorneys' Eyes Only," I conclude that the defendants have not satisfied their burden of showing entitlement to the restrictive protective order they have requested. However, rather than accepting the plaintiff's proposed protective order, which omits any reference to the category of "Highly Confidential—Attorneys' Eyes Only" materials, I will retain that category in the protective order, but make clear that Mr. Rheault will be among those entitled to have access to that material.

IT IS SO ORDERED.

SIGNED this 22nd day of December, 2023

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE