IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK RHEAULT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 23-700-WCB |
| ) | |
| HALMA HOLDINGS INC. and ) | **FILED UNDER SEAL** |
| CENTRAK, INC., ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

The parties in this case have several discovery disputes that they have brought to the court on the eve of the close of fact discovery. After expedited briefing of the issues, *see* Dkt. Nos. 119–123, I resolve the issues as follows:

1. The defendants' request

The defendants contend that they should be given additional time to depose the plaintiff, Mark Rheault. I previously granted them seven additional hours to depose Mr. Rheault, on top of the seven hours permitted to them under the default provision in Rule 30(d)(1) of the Federal Rules of Civil Procedure. Accordingly, the defendants deposed Mr. Rheault for a total of more than 14 hours over two days.[1] They now seek an additional five hours of deposition time with Mr. Rheault.

As justification for their request, the defendants argue that during the 14-plus hours of his deposition that have already been completed, Mr. Rheault was uncooperative, repeatedly refusing to give responsive answers to questions, giving long-winded answers that wasted deposition time,

---

[1] Based on the court reporter's calculations, Plaintiff's counsel contends that the actual time spent in the two deposition sessions with Mr. Rheault was 14 hours and 32 minutes. *See* Dkt. No. 122 at 1 n.1.

1

and spending unduly long periods of time reviewing documents before answering questions about those documents. Based on that alleged lack of cooperation on Mr. Rheault's part, the defendants contend that they are entitled to an additional four hours of deposition time with Mr. Rheault. In addition, the defendants contend that they should be allowed to have a fifth hour of additional deposition time with Mr. Rheault because on December 20, 2024, Mr. Rheault's counsel served a supplemental response to one of the defendants' interrogatories that added certain allegations of misrepresentation by the defendants.

In seeking five hours of additional deposition time, the defendants rely on the provision of Rule 30(d)(1) that states that the court "must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." The defendants claim that Mr. Rheault impeded and delayed the examination to the extent that they should be entitled to the additional deposition time they seek.

The defendants have provided me with excerpts from the two sessions of the 14-hour deposition of Mr. Rheault to support their contentions that his conduct interfered with their ability to conduct the deposition to the point that additional time should be added to the 14 hours already allotted.[2]  *See* Dkt. No. 120-2 at 13–66. Upon reviewing those portions of the deposition, I discovered that what transpired in the deposition was, for the most part, just the kind of quotidian push-and-pull that is typical in adversarial depositions. In short, I found nothing particularly out of the ordinary for depositions in sharply contested civil cases involving sophisticated parties.

---

[2] The defendants did not provide me with the entire transcript of the deposition, but I assume they selected the portions they regarded as most supportive of their argument. The plaintiff subsequently provided me with full transcripts of both sessions of the deposition, *see* Dkt. Nos. 122-2, 123; I have reviewed that submission and have found nothing new in that material that would support the defendants' claim to entitlement to an additional five hours with Mr. Rheault.

In the course of the deposition, the defendants' counsel pressed to obtain damaging information from the witness, and the witness pushed back in various ways, including providing explanations for answers that went further (and took more time) than the questioner would have liked. However, I did not find that Mr. Rheault's answers to the questions he was asked were abusively extended, particularly in view of the open-ended nature of some of the questions he was asked.

There were a few instances in which Mr. Rheault, when asked to examine a document, took time to read it. Most of those instances took less than a minute. In one instance, Mr. Rheault took longer to examine a document that was presented to him. However, the document in question, together with an attachment, was nine pages long, containing fine print and redline edits that required the witness to use a magnifying glass to read portions of the document. *See* Dkt. No. 122-4. It took Mr. Rheault about eleven minutes to read that document. *See* Dkt. No. 120 at 2 n.4.

The time taken by Mr. Rheault to read the documents about which he was questioned did not remotely approach the five extra hours that the defendants seek to depose Mr. Rheault. Even assuming that Mr. Rheault was dragging his feet in reviewing the documents—and my review of the video of his review of the nine-page document does not suggest that he was—the delays were not lengthy or frequent enough to materially prejudice the defendants' rights to interrogate Mr. Rheault fully. That is particularly so in light of the fact that the defendants had already been granted twice as much time with Mr. Rheault as is regarded as the maximum period for a deposition absent a stipulation or order from the court under Federal Rule of Civil Procedure 30(d)(1). The defendants could have minimized the time required for Mr. Rheault to review the documents

during the deposition if they had requested that he review the documents in advance of the deposition, but according to the plaintiff, Dkt. No. 122 at 1, they did not.[3]

I also find no merit in the defendants' contention that they should be given additional deposition time because the plaintiff served a supplemental interrogatory answer on December 20, 2024, in which the plaintiff identified particular misstatements that the defendants allegedly made to Mr. Rheault in the course of the events leading to this litigation. *See* Dkt. No. 120-2 at 5–11. The allegations appear to relate to matters that were previously turned up in discovery that, in the plaintiff's view, would cast doubt on the truthfulness of certain statements made to Mr. Rheault during negotiations between the parties. Given the nature of the allegations, it is difficult to understand how Mr. Rheault would have any special knowledge regarding the evidence that arguably cast doubt on the truthfulness of the statements made to him, as he was not privy to that information. The defendants do not suggest what Mr. Rheault's knowledge regarding that evidence might be, or how questioning Mr. Rheault regarding the alleged misstatements could advance their cause.

2. The plaintiff's requests

For their part, the plaintiffs ask that I direct the defendants to produce documents falling within six categories that were the subjects of several of the plaintiff's requests for production

---

[3] In the notes accompanying the 2000 amendment to Rule 30, the Advisory Committee on Civil Rules made the point that in cases in which a witness will be questioned about numerous or lengthy documents, "it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them." Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment. The Advisory Committee further stated that "[s]hould the witness nevertheless not read the documents in advance, thereby prolonging the deposition, a court could consider that a reason for extending the time limit." *Id*. Because the defendants did not avail themselves of this opportunity, they cannot reasonably complain that Mr. Rheault took the time during the deposition to examine the documents about which he was to be questioned.

4

under Federal Rule of Civil Procedure 34. *See* Dkt. No. 119. Although the requests do not appear to entail the production of a large volume of records, the plaintiff contends that the defendants resisted producing the requested documents on the grounds that their production would not be proportional or reasonably likely to lead to relevant evidence. In their responsive letter, the defendants contend that several of the requests are now moot and that others seek materials that are irrelevant and will not be helpful to the plaintiff's case. I address each of the categories of requested production below.

--QuickBooks General Ledger: The plaintiff seeks the records of Infinite Leap, which were managed in QuickBooks to obtain information such as customer names and transaction-level detail for services, software, and support/maintenance revenue for the relevant period. That information is directly relevant to determining whether the plaintiff was entitled to additional compensation in the form of an earnout and, if so, how much that compensation should be. It does not appear burdensome to produce this material.

The defendants contend that this request is moot. According to the defendants, much of the requested QuickBooks data has been produced, and the defendants have agreed to search for and produce any missing materials (which the plaintiff has identified as software data) from the archived Infinite Leap system, and that any such production will be made within days. To the extent that court intervention is still required on this issue, I will order that material to be produced.

--Client Hours Report for the Professional Services/Consulting team during the Earnout Periods: The defendants produced a report showing the hours worked by the defendants' consulting team from April to September 2022. The plaintiff seeks similar information for the remainder of the Earnout Periods.

The defendants argue that client hour reports are irrelevant because "[w]hether the team ultimately worked more or less than the estimated hours did not change the agreed upon fee," and cite the fact that the Agreement "does not reference revenue tied to employee hours." Dkt. No. 121 at 2. The defendants further argue that even if they "pulled the limited available data on hours logged, this data would be incomplete and not usable." *Id*.

The question whether the material sought is relevant to the calculation of the earnout is an issue going to the merits of the parties' arguments at trial. The plaintiff is entitled to determine for himself whether the "client hours" affect the earnout and to have the information enabling him to do so, if documents containing that information exist. I will order that the requested material be produced, to the extent that it exists.

--<u>Monthly Earnout Reports from May to September 2023 and Underlying Data</u>: These records, including the underlying data, are clearly producible. At one point, these records were apparently created and saved, but according to the plaintiff, the defendants have said the records cannot be located. *See* Dkt. No. 119 at 2. The plaintiff argues that if these records are not produced, the defendants should be subject to sanctions for spoliation of evidence, such as an instruction that the factfinder should infer that the reports would have been unfavorable for the defendants.

It is premature to address any claim of spoliation at this point. The defendants argue that the request is moot, as they have produced all the responsive records in this category that have been located. The defendants state that they have produced a variety of records showing monthly data for the earnout calculations and that they have consulted with the former employee responsible for that category of records, and no additional records have been identified. For now, I will order that the records be diligently searched for and, if found, produced. If, after a diligent search has

6

been conducted, no additional records are located, no further production will be possible. There is insufficient evidence relating to spoliation at this juncture; if necessary, that issue can be revisited at a later point in the proceedings.

--"Engage" Final Work Products and Proposals: "Engage" is CenTrak's name for the "solution design" service that Infinite Leap provided to generate future sales. The plaintiff seeks Engage final work products and proposals, arguing that they are "necessary to determine which revenue was attributable to Infinite Leap consultants, and which revenue was not related to Engage deliverables or proposals," so that the correct amount of earnout based on revenues from Engage may be calculated. Dkt. No. 119 at 3.

The defendants argue that the information about which specific consultants derived revenue from Engage and non-Engage products or services is "completely irrelevant to the earnout calculation." Dkt. No. 121 at 2. That argument, however, mischaracterizes the plaintiff's position on why the final work products and proposals for Engage are necessary. The plaintiff seeks documents relevant to showing whether "revenues generated by, and from, and as a result of Engage . . . [were] in fact credited to his Earnout." Dkt. No. 119 at 3. The defendants do not contest that Engage revenues affect the earnout calculation.

In any event, the defendants assert that they "have produced earnout report data from which Plaintiff can view all Engage revenue included in the earnout calculation," and "are checking on any other responsive documents." Dkt. No. 121 at 2. The plaintiff complains, however, that the defendants have offered only to search for "examples" of Engage final work products and proposals by January 3, 2025. *See* Dkt. No. 119 at 3 n.4. The plaintiff correctly states that the

request is for all Engage final work products and proposals, not for "examples" of such information. I will order that the requested documents be produced.[4]

--SalesForce Reports: In order to obtain information as to whether the defendants complied with their contractual obligation to fund five full-time Infinite Leap sales representatives during the earnout period, the plaintiff argues that it needs SalesForce reports that would show the activities of those individuals during the earnout period. The plaintiff has narrowed his discovery request to a report showing leads, opportunities, and accounts assigned to those CenTrak employees who were designated as full-time dedicated Infinite Leap sales representatives during the earnout periods, *i.e.*, November 18, 2021, to September 30, 2023.

The defendants respond that CenTrak's SalesForce report "will not show when an account was transitioned from one salesperson to another, or who the prior salesperson was—it will only show the current salesperson of an open opportunity or the last assigned salesperson at the time an opportunity was closed." Dkt. No. 121 at 2. The defendants add that they have produced a SalesForce report related to Infinite Leap products and services during the Year 2 Earnout Period and will produce a similar SalesForce report containing data for the Year 1 Earnout Period next week. The reports may not contain all the information the plaintiff would like to have. If a report containing the information the plaintiff seeks exists, it should be produced. But if no such report exists, the defendants are not required to generate that information and provide it to the plaintiff.[5]

---

[4] It is not clear whether the plaintiff's request for Engage final work products and proposals, which the defendants say was first made on November 26, 2024, falls within the scope of any of the previous formal document requests. However, rather than prolong this dispute to resolve that issue, and in view of the defendants' willingness to produce the requested materials, I will direct that they be produced.

[5] It hardly needs to be said, but to ensure there is no confusion on the point, a request for the production of documents and electronically stored information under Rule 34 requires the requested party to produce records responsive to the request, but it does not require the requested party to create records that do not already exist or are not in the custody, possession, or control of

8

--Sales Orders Report: The plaintiff seeks "a sales order report that includes a full list of sales orders closed during the Year 1and 2 Earnout Periods," specifying that this "report should include the individual line items (item numbers, SKUs, line amounts, etc.) included in each sales order, the date of the order, customer, and the associated sales representative." Dkt. No. 119 at 3. The defendants respond that this request is moot because they have produced extensive sales order data for the period of April 2021 to February 2023, together with the spreadsheets used to calculate the earnout, which contain sales order data from November 18, 2021, to September 30, 2023. *See* Dkt. No. 121 at 2. Again, the defendants are not required to generate a report that does not exist. But if such a report exists, it is clearly discoverable, and I order that it be produced.

\* \* \* \* \*

Several of the letters submitted to the court in connection with these disputes were filed under seal, although it is difficult to understand why. Nonetheless, in an excess of caution, I have filed this order under seal. The parties are directed to advise the court by 5:00 p.m. on December

---

the requested party. Nor does it require the requested party to provide information that is not found in a requested document. Obtaining information not found in requested documents is the province of other discovery mechanisms, such as depositions, interrogatories, and requests for admission. *See, e.g., Ameritas Life Ins. Corp. v. Wilmington Sav. Soc'y*, No. 23-236, 2024 WL 4417096, at *1 (D. Del. Oct. 4, 2024) ("Rule 34…can be used only to require the production of things in existence.") (quoting *Ingram v. Home Depot, U.S.A., Inc.,* No. Civ.A 97-8060, 1999 WL 88939, at *1–2 (E.D. Pa. Feb. 19, 1999); *Lerblance v. Calyx Energy III, LLC*, No. CIV-23-47, 2024 WL 3275789, at *3 (E.D. Okla. July 2, 2024) ("It is well settled that a responding party's obligations under Fed. R. Civ. P 34 do not extend to non-existent materials."); *Stedillie v. Milford Cas. Ins. Co.*, 4:23-CV-4048, 2024 WL 449630, at *10 (D.S.D. Feb. 6, 2024) ("A request for production under Rule of Civil Procedure 34 cannot require a party to create a document that does not exist . . . ."); *Soileau & Assocs., L.L.C. v. La. Health Serv. & Indem. Co.*, No. 18-710, 2019 WL 11660191, at *2 (E.D. La. Oct. 18, 2019) (same); *Banerjee v. Univ. of Tenn.*, No. 3:17-CV-526, 2019 WL 1062378, at *6 (E.D. Tenn. Mar. 6, 2019) (same); *Dearborn Tree Serv., Inc. v. Gray's Outdoorservices, LLC*, No. 13-cv-12584, 2014 WL 6886407, at *4 (E.D. Mich. Dec. 4, 2014) ("A request to produce cannot ask the responding party to create documents, such as lists . . . ."); *Harris v. Advance Am. Cash Advance Ctrs.*, 288 F.R.D. 170, 172 (S.D. Ohio 2012) (same).

9

31, 2024, whether there are any portions of this order that should be maintained under seal, and if so, why.

    IT IS SO ORDERED.

    SIGNED this 30th day of December, 2024.

                                      _____
                                      WILLIAM C. BRYSON
                                      UNITED STATES CIRCUIT JUDGE